# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| NATALIE MARSHALL,<br>    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>    Defendant. | Case No. 1:18-cv-815<br>Dlott, J.<br>Litkovitz, M.J.<br><br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff Natalie Marshall brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 9) and the Commissioner's response in opposition (Doc. 15).

**I. Procedural Background**

Plaintiff protectively filed her application for SSI in January 2015, alleging disability since October 23, 2014 due to depression, anxiety, and the residuals of an automobile accident, which resulted in her inability to walk or use her right arm. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Christopher Tindale. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on September 20, 2017. On March 15, 2018, ALJ Tindale issued a partially favorable decision finding plaintiff disabled for a closed period from October 23, 2014 through March 6, 2016. The ALJ determined that due to medical improvement plaintiff was not disabled starting March 7, 2016. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

2

the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### III. Medical Evidence

On October 23, 2014, plaintiff sustained injuries as a pedestrian in a motor vehicle accident. (Tr. 305). She suffered a complex open fracture of her right upper extremity from her humerus to her mid-forearm and a closed fracture of her right tibia and fibula. (Tr. 306). She underwent two surgeries and subsequently spent several weeks at a nursing facility undergoing physical and occupational therapy. (Tr. 343-352, 277-298).

Orthopedic records show that plaintiff was full weightbearing and improving by February 5, 2015, but she continued to use a cane for support. (Tr. 377). By May 28, 2015, she was able to walk unassisted, but she complained of continued decreased range of motion in her right elbow. (Tr. 454). Plaintiff's arm surgeon, Luis Bolano, M.D., noted delayed healing in her right arm. (Tr. 454-455).

Plaintiff began treating at Shawnee Family Health Center on June 11, 2015, and at her initial visit she complained of ongoing pain and difficulty standing for long periods of time. (Tr. 512). On July 9, 2015, she noted ongoing swelling and decreased mobility in her right arm and planned to see Dr. Bolano to discuss another surgery. (Tr. 509).

On October 13, 2015, plaintiff underwent a second surgery on her right arm. (Tr. 668). Dr. Bolano removed several pins and performed a debridement of the right elbow. (Tr. 668-669). Three months post-operatively, plaintiff continued to experience arm pain and decreased range of motion, and she was scheduled for another surgery. (Tr. 556-57). On February 2, 2016,

Dr. Bolano removed a symptomatic buried screw. (Tr. 692). Additional hardware was removed during a subsequent surgery on February 23, 2016. (Tr. 722).

At a follow-up appointment with Dr. Bolano on March 9, 2016, plaintiff's sutures were removed. (Tr. 562). Dr. Bolano noted serious drainage of the wound, skin flap redness, and devascularization of the skin flap. (Tr. 562). On March 17, 2016, Dr. Bolano documented improvement of the wound. He noted there was no drainage of the wound and that the right elbow wound was healing well. Dr. Bolano stated that plaintiff had "improved significantly" and recommended that she continue her current therapy. (Tr. 563-564).

Plaintiff continued to complain of ongoing drainage, sharp pain, and decreased range of motion at her next visit with Dr. Bolano on May 2, 2016. (Tr. 566). Dr. Bolano documented her decreased range of motion as well as decreased grip strength secondary to pain. (Tr. 566). On June 22, 2016, plaintiff reported some drainage and stated that one of the wires in her arm became visible just two days prior. (Tr. 568). Dr. Bolano noted decreased range of motion and decreased grip strength, removed a suture from plaintiff's right elbow, and recommended that she continue with antibiotics and her current therapy. (Tr. 568-69). Decreased range of motion and grip were documented at her visits with Dr. Bolano on June 30, 2016 and August 15, 2016. (Tr. 570, 572). Plaintiff rated her pain "at a constant 5, which increases with activity." (Tr. 572). On October 17, 2016, Dr. Bolano documented mild crepitus and stated that her range of motion was still limited but had improved significantly. (Tr. 590). Dr. Bolano recommended "activity as tolerated." (*Id.*). At her six month follow-up appointment in April 2017, Dr. Bolano's exam of the right elbow revealed no drainage or erythema of the previous wound, which was well-healed. Plaintiff had active range of motion, and her passive range of motion

4

was limited but significantly improved with mild crepitus. (Tr. 588). Plaintiff was to follow-up in another six months. (Tr. 589).

Plaintiff also received treatment from Justin Nolan, N.P., at the Southern Ohio Medical Center Family Practice. She complained of chronic pain in her right arm at her monthly visits from January to April 2016. (Tr. 516, 521, 528, 533). On May 9, 2016, plaintiff reported left arm and wrist pain, possibly due to over-use of the left arm to compensate for the right. (Tr. 536). She continued to complain of right arm pain in June and July 2016. On August 11, 2016, plaintiff stated that her pain had increased, and it felt like a wire was out of place. (Tr. 543, 546, 551). On October 13, 2016, plaintiff reported that a wire had popped out of her arm three days prior, causing swelling and bruising. (Tr. 621). In November 2016, plaintiff did not complain of right arm pain and denied any joint swelling or limitation of motion. (Tr. 617-618). At her appointments in February and April 2017, Mr. Nolan reported that plaintiff was "doing well and has no current complaints." (Tr. 594, 600). On June 19, 2017, plaintiff complained of a lot of pain in her right elbow and was wearing a brace at the instruction of Dr. Bolano. (Tr. 731). In August 2017, plaintiff complained of cold symptoms but had no additional complaints. (Tr. 724).

Mr. Nolan completed a medical source statement on September 12, 2017. (Tr. 743-44). He opined that plaintiff could work no hours per work day; stand for 15 minutes at a time and two to four hours total in an eight-hour workday; sit for 60 minutes at time and two to four hours in a workday; lift less than five pounds with her right arm; perform occasional fine and gross manipulation with her right arm; and would need to elevate her legs most of the time during an eight-hour workday. (Tr. 743). He further opined that plaintiff would likely be absent more than

5

four days per month and off-task more than 20% of the workday due to her impairments. (Tr. 744).

## IV. The ALJ Decision

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since October 23, 2014, the date the plaintiff became disabled (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2. From October 23, 2014 through March 6, 2016, the period during which the [plaintiff] was under a disability, the claimant had the following severe impairments: residual deficits from fractures of the upper and lower extremities; obesity (20 CFR 416.920(c)).
>
> 3. From October 23, 2014 through March 6, 2016, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that, from October 23, 2014 through March 6, 2016, the [plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except for the following limits. The [plaintiff] could never climb ramps, stairs, ladders, ropes, or scaffolds. The [plaintiff] could occasionally stoop, kneel, crouch, and crawl. The [plaintiff] could only occasionally reach with the right upper extremity. The [plaintiff] had to avoid all exposure to dangerous hazards, such as unprotected heights and dangerous moving machinery. The [plaintiff] could frequently handle and finger with the right upper extremity. Due to recovery from multiple surgeries and exacerbations (sic) symptoms between surgeries, the [plaintiff] would have been off-task twenty percent of the workday and would have missed three days of work per month.
>
> 5. From October 23, 2014 through March 6, 2016, the [plaintiff] was unable to perform any past relevant work (20 CFR 416.965).[1]
>
> 6. The [plaintiff] was a younger individual age 18-44, on the established disability onset date (20 CFR 416.963).

---

[1] Plaintiff has past relevant work as a child monitor, a medium position, and a waitress, a light position. (Tr. 20).

7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. The [plaintiff]'s acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 416.968).

9. From October 23, 2014 through March 6, 2016, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 416.960(c) and 416.966).

10. The [plaintiff] was under a disability, as defined by the Social Security Act, from October 23, 2014 through March 6, 2016 (20 CFR 416.920(g)).

11. The [plaintiff] has not developed any new impairment or impairments since March 7, 2016, the date the [plaintiff]'s disability ended.  Thus, the [plaintiff]'s current severe impairments are the same as that present from October 23, 2014 through March 6, 2016.

12. Beginning March 7, 2016, the [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.994(b)(5)(i)).

13. Medical improvement occurred as of March 7, 2016, the date the [plaintiff]'s disability ended (20 CFR 416.994(b)(1)(i)).

14. The medical improvement that has occurred is related to the ability to work because there has been an increase in the [plaintiff]'s residual functional capacity (20 CFR 416.994(b)(1)(iv)(A)).

15. After careful consideration of the entire record, the [ALJ] finds that, beginning March 7, 2016, the [plaintiff] has had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except for the following limitations.  The [plaintiff] can never climb ramps, stairs, ladders, ropes, or scaffolds.  The [plaintiff] can occasionally stoop, kneel, crouch, and crawl.  The [plaintiff] can only frequently reach, finger, and handle with the right upper extremity.  The [plaintiff] must avoid all exposure to dangerous hazards, such as unprotected heights and dangerous moving machinery.

16. The [plaintiff] is still unable to perform past relevant work (20 CFR 416.965).

17. The [plaintiff]'s age category has not changed since March 7, 2016 (20 CFR 416.963).

18. The [plaintiff]'s education level has not changed (20 CFR 416.964).

> 19. Beginning March 7, 2016, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 20. Beginning March 7, 2016, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.960(c) and 416.966).[2]
>
> 21. The [plaintiff]'s disability ended March 7, 2016, and the [plaintiff] has not become disabled again since that date (20 CFR 404.1594(1)(8)).

(Tr. 15-25).

**V. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as document preparer (47,000 jobs in the national economy), assembler (25,000 jobs in the national economy), and dresser (16,000 jobs in the national economy). (Tr. 24).

8

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

## VI. Specific Error

On appeal, plaintiff alleges a single assignment of error: that the ALJ erred when he found that plaintiff had experienced medical improvement such that she was no longer entitled to disability benefits as of March 7, 2016. (Doc. 9). Plaintiff alleges that contrary to the ALJ's finding, Dr. Bolano and Mr. Nolan's treatment records do not support medical improvement; plaintiff's hearing testimony does not support a finding of medical improvement of the right arm; and the ALJ's selection of a medical improvement date of March 7, 2016 has no basis in the medical or other evidence in the record.

## VII. Resolution

Where, as here, an ALJ finds a claimant disabled for a closed period, the ALJ must find a medical improvement in the claimant's condition to end her benefits. *Niemasz v. Barnhart,* 155 F. App'x 836, 839-40 (6th Cir. 2005). *See also Cobb v. Comm'r of Soc. Sec*., No. 1:09cv51, 2010 WL 565260, at *8 (W.D. Mich. Feb. 11, 2010) (citing *Shepherd v. Apfel*, 184 F.3d 1196, 1198, 1200 (10th Cir. 1999) (medical improvement standard as set forth in 20 C.F.R. §§ 404.1594 and 416.994 applies to closed period cases); *Long v. Sec'y of HHS,* No. 93–2321, 1994

9

WL 718540, at *2 (6th Cir. Dec. 27, 1994) ("In order to find a closed period of disability, the Secretary must find that at some point in the past, the claimant was disabled and that, at some later point in the past, he improved to the point of no longer being disabled"); *Jones v. Shalala,* 10 F.3d 522, 524 (7th Cir. 1993)). Whether an individual's entitlement to benefits continues depends on whether "there has been any medical improvement in [the individual's] impairment(s) and, if so, whether this medical improvement is related to [the individual's] ability to work." 20 C.F.R. § 416.994(b). There must be "substantial evidence" of "medical improvement" and proof that the claimant is "now able to engage in substantial gainful activity" to satisfy the medical improvement standard. 42 U.S.C. § 423(f)(1). *See also Niemasz,* 155 F. App'x at 840.

Medical improvement is defined as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled." *Kennedy v. Astrue,* 247 F. App'x 761, 764-65 (6th Cir. 2007) (citing 20 C.F.R. § 404.1594(b)(1)). Any findings of "a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's] impairment(s). . . ." 20 C.F.R. § 416.994(b)(l)(i).[3] If there has been a decrease in the severity of the impairments since the favorable decision, the medical improvement is related to the individual's ability to work only if there has been a corresponding 'increase in [the claimant's] functional capacity to do basic work activities. . . .'" *Kennedy,* 247 F. App'x at 765 (quoting 20 C.F.R. § 404.1594(b)(3)). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 361 (6th Cir. 2001). Medical improvement is "determined by a comparison of prior and current medical evidence which must show that there

---

[3] Former § 416.994 was in effect until March 27, 2017, and therefore applies to plaintiff's claim filed in 2015.

have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 416.994(c)(1).

If there is a finding of medical improvement, the ALJ must determine whether the individual has the ability to engage in substantial gainful activity. *Kennedy,* 247 F. App'x at 765. The implementing regulations for this part of the evaluation incorporate many of the standards set forth in the regulations that govern initial disability determinations. *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7)). The difference is that "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7); *Griego v. Sullivan,* 940 F.2d 942, 944 (5th Cir. 1991)). An increase in the claimant's functional capacity will lead to a cessation of benefits only if, as a result, the claimant can perform her past work or other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.994(f)(7), (8). There is no presumption of continuing disability. *Kennedy,* 247 F. App'x at 764 (citing *Cutlip v. Sec'y of HHS,* 25 F.3d 284, 286-287 n. 1 (6th Cir. 1994)).

The ALJ reasonably determined that plaintiff experienced medical improvement as of March 7, 2016, the date her disability ended. (Tr. 21). The ALJ found that in late 2015 and early 2016, during her period of disability, plaintiff underwent a string of surgeries. (Tr. 22). However, after her last surgery on February 23, 2016 to remove additional hardware from her right elbow, plaintiff reported significant, stable improvement that corresponded with significant improvement in the clinical findings. (Tr. 22). Specifically, the ALJ determined that the normal clinical findings reflected in the treatment records of Dr. Bolano and Mr. Nolan documented plaintiff's medical improvement.

Dr. Bolano's records show that in March 2016, plaintiff was healing well and had "improved significantly." (Tr. 22, Tr. 564). Subsequent treatment notes from May 2016 through

11

April 2017 consistently showed clinical examination findings of normal strength, muscle tone, sensation, reflex, and vascular findings in the upper extremities, and the only limitations were some limited range of motion findings and "mild" crepitus in the right elbow. (Tr. 22, citing Tr. 566-73, 588-91). The ALJ also noted that following the removal of additional hardware from plaintiff's elbow in February 2016, her treatment was largely stable, consisting of pain medication and no further surgical intervention by Dr. Bolano. (Tr. 22). Dr. Bolano's records reflect that the medical severity of plaintiff's right arm impairment decreased and support the ALJ's finding of medical improvement.

In addition, the ALJ reasonably considered the records of Mr. Nolan during the relevant time period. Mr. Nolan's treatment notes from March 7, 2016 show that while plaintiff complained of right arm pain, she denied joint swelling or limitation of motion. On physical examination, her upper and lower extremities showed no gross deformity and range of motion was grossly intact. (Tr. 22, 526-529). Subsequent treatment records consistently documented similar normal findings (Tr. 530-550, 594-630, 724-742), with the exception of swelling in the right elbow in August 2106 (Tr. 554) and "very minimal pain" in the right elbow/arm in December 2016 (Tr. 613). Thus, contrary to plaintiff's contention, the ALJ thoroughly considered the clinical and examination findings of Dr. Bolano and Mr. Nolan and reasonably determined that they showed a decrease in the severity of plaintiff's right arm impairment and supported a finding of medical improvement.[4]

---

[4] Although not listed as an assignment of error by plaintiff, the ALJ reasonably determined that Mr. Nolan's medical source statement was entitled to little weight. Mr. Nolan opined, *inter alia*, that plaintiff was unable to work a single hour per day and could only stand/sit two to four hours per workday, lift five to ten pounds, occasionally use her right hand for manipulation, never raise her right arm above the shoulder, must elevate her legs "most of [the] time during the workday," would miss work more than four days of work per month, and would be off-task more than 20% of the workday. (Tr. 743-44). The ALJ noted that Mr. Nolan failed to offer any objective evidence to support his opinion, and the limitations he assessed were disproportionate to the available medical evidence, including his own treatment notes which repeatedly documented normal clinical findings. (Tr. 23).

The ALJ also considered that following the closed period of disability, plaintiff saw her leg specialist, Dr. Steven Lochow, M.D., only one time in October 2016. (Tr. 23, citing Tr. 592-93). During that visit, plaintiff ambulated independently without use of an assistive device and she was neurovascularly intact, though she had some limited range of motion in the left knee and right lower extremity. (*Id.*). The ALJ also noted that Dr. Lochow advised plaintiff to continue activities as tolerated because she had healed "reasonably well" and appeared to be doing "okay." (*Id.*). The ALJ additionally considered the non-medical evidence, including the limitations alleged by plaintiff, in finding medical improvement after the closed period of disability. As the ALJ reasonably noted, plaintiff engage in a number of daily activities that were inconsistent with the debilitating limitations she alleged. (Tr. 23). Plaintiff regularly engaged in activities requiring the use of her upper extremities, including preparing meals, sweeping floors, shopping for groceries, doing laundry, taking care of and feeding pets, operating a tablet computer on a nearly daily basis, reading on a regular basis, and coloring on a regular basis. (Tr. 23, 261-68, 428, 446). The ALJ further noted that plaintiff engaged in activities requiring her to sit, stand, and/or walk for prolonged periods, including shopping for groceries, attending church services, and "go[ing] for rides" with friends. (*Id.*). Finally, plaintiff told Mr. Nolan in late 2016 that she had been getting some activity in and had been "walking quite a bit." (Tr. 23, 616-20).

The record evidence substantially supports the ALJ's finding of medical improvement beginning March 7, 2016.[5]

---

[5] Plaintiff contends the ALJ's selection of March 7, 2016 as the date of medical improvement has no basis in the record. Contrary to plaintiff's argument, it appears the ALJ selected the date based on Mr. Nolan's treatment of plaintiff on that date, which was several weeks after the last hardware removal from her elbow. (Tr. 526-30).

13

The ALJ's finding that plaintiff's medical improvement was related to her ability to work is also supported by substantial evidence. During the closed period of disability, the ALJ determined that plaintiff would likely be off-task 20% of the workday and absent from work three days per month. (Tr. 17). As of March 7, 2016, the ALJ eliminated these restrictions from plaintiff's RFC. Plaintiff contends the ALJ "did not provide any explanation as to how or why he concluded that [plaintiff's] wound and partial range of motion improvement were significant enough to warrant such an alleged increase in her functional ability to do work activities." (Doc. 9 at 11).

Contrary to plaintiff's argument, the ALJ specifically determined that these limitations during the closed period of disability were "[d]ue to recovery from multiple surgeries and exacerbations (sic) symptoms between surgeries." (Tr. 17). The ALJ thoroughly discussed the medical evidence relating to the traumatic leg and arm injuries plaintiff sustained during an automobile accident and her lengthy period of recovery. (Tr. 18). The ALJ also discussed the recurrent complications plaintiff experienced relating to the surgical hardware in her arm, which necessitated several surgeries to remove the hardware and debridement of avascular necrosis of the right elbow. (Tr. 18-19). The ALJ then explained that following the date plaintiff's disability ended, the medical evidence shows plaintiff's upper extremity had significantly improved, and plaintiff had no further hospital admissions or surgeries. The ALJ "therefore removed the off-task and absentee provisions included in the prior residual functional capacity, as these related to the claimant's multiple arm surgeries and exacerbations in symptoms related to her arm complications. . . ." (Tr. 23). The ALJ reasonably explained the justifications for eliminating these limitations, and those reasons find substantial support in the record. The ALJ's determination that plaintiff's medical improvement resulted in her ability to engage in substantial

14

gainful activity is supported by substantial evidence, and plaintiff's assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED**, and this matter be **CLOSED** on the docket of the Court.


Date: June 1, 2020

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| NATALIE MARSHALL,<br>    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>    Defendant. | Case No. 1:18-cv-815<br>Dlott, J.<br>Litkovitz, M.J. |

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).